IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SPRINT NEXTEL CORPORATION and
SPRINT COMMUNICATIONS COMPANY,
L.P.,

        Plaintiffs,

v.

ACE WHOLESALE, INC., JASON
FLOAREA, ERIC MANDREGER,
DOMINICK LANORE, TONY ARCHIE,
JOSE GENEL, BARNEY GUNN,
COPATRADE, INC., and MOSHE
ALEZRA,

        Defendants.

CIVIL ACTION NO.

1:12-cv-02902-JEC

## ORDER & OPINION

This case is before the Court on defendants Eric Mandreger, Dominick Lanore, and Jose Genel's Second Motion to Dismiss for Lack of Personal Jurisdiction [123]. The Court has reviewed the record and, for the reasons set out herein, **GRANTS** the Second Motion to Dismiss for Lack of Personal Jurisdiction [123].

## BACKGROUND

### I.   PROCEDURAL BACKGROUND

Sprint Nextel Corporation and Sprint Communications Company, L.P. ("plaintiffs") are in the mobile telephone and wireless network businesses. Ace Wholesale, Inc. and its employees, Jason Floarea,

Eric Mandreger, Dominick Lanore, Tony Archie, Jose Genel, Barney Gunn, Copatrade, Inc., and Moshe Alezra ("defendants"), are involved in the buying and selling of mobile telephones.  This case arises from a dispute over defendants' selling of plaintiffs' mobile telephones.

Plaintiffs refer to defendants' alleged activities as a "Bulk Handset Trafficking Scheme" (the "Scheme"). (Pls.' Compl. [1] at ¶ 2.)  Under the Scheme, defendants purchased large quantities of plaintiffs' mobile telephones and then "unlock[ed]" them so that they could be used on wireless networks other than plaintiffs'. (*Id.* at ¶¶ 3-4.) Defendants then resold these telephones, marketing them under plaintiffs' brand names.  (*Id.* at ¶ 4.)  This harms plaintiffs, because it renders independent the telephones' functioning from the users' ongoing subscriptions to plaintiffs' wireless network, all the while taking advantage of the goodwill consumers associate with plaintiffs' brand of telephones.  Plaintiffs maintain that it is only from the wireless network that they make their profits, not from the sales of the telephones.  (*Id.* at ¶ 27.)  On this basis, plaintiffs allege that the Scheme has cost them "millions of dollars in losses and is causing immediate and irreparable injury." (*Id.* at ¶ 8.)

In bringing the present action, plaintiffs allege causes of action for breach of contract (Count One); unfair competition (Count Two); tortious interference with business relationships and

2

prospective advantage (Count Three); civil conspiracy (Count Four); unjust enrichment (Count Five); conspiracy to induce breach of contract (Count Six); common law fraud (Count Seven); fraudulent misrepresentation (Count Eight); trafficking in computer passwords (Count Nine); unauthorized access (Count Ten); unauthorized access with intent to defraud (Count Eleven); federal trademark infringement (Count Twelve); false advertising (Count Thirteen); contributory trademark infringement (Count Fourteen); deceptive trade practices (Count Fifteen); and violations of the Georgia Computer Systems Protection act, O.C.G.A. § 16-9-93(a), (b) and (e) (Count Sixteen). (Pls.' Compl. [1] at ¶¶ 72-212.)

In response to the plaintiffs' complaint, defendants Eric Mandreger, Dominick Lanore, and Jose Genel (collectively, "objecting defendants") all employees of defendant Ace Wholesale, Inc. ("Ace"), filed a motion to dismiss for lack of personal jurisdiction [33] pursuant to Federal Rule of Civil Procedure 12(b)(2).  This Court denied the motion without prejudice and ordered the parties to pursue jurisdictional discovery for 60 days, beginning on February 6, 2013. (Order [87] at 2.)  During this time, plaintiffs took depositions of objecting defendants and sought the records of Ace for evidence of objecting defendants' activities in the company.[1]  At the conclusion

---

[1] Plaintiffs were unsatisfied with Ace's cooperation, which has given rise to plaintiffs' motions for sanctions [118 and 155].

3

of that period, objecting defendants filed their second motion to dismiss for lack of personal jurisdiction [123]. Plaintiffs filed a response opposing the motion to dismiss [125], and objecting defendants filed a reply in support of the motion [126].

II. **FACTUAL BACKGROUND**

    A. **GENERAL**

Ace is incorporated in Michigan, with its business offices in Troy, Michigan. (Defs.' Mem. [33-1] at 1.)[2] Ace operated retail stores in three cities--Taylor, Michigan, Chicago, Illinois and Atlanta, Georgia--until August 21, 2012, when federal officers raided the Troy business offices and seized all Ace property, which has since been held by the United States Attorney's Office pending a criminal investigation into Ace's business practices. (*Id.* at 1-3.) Objecting defendants Dominick Lanore and Jose Genel managed the Taylor and Chicago retail stores, respectively. (*Id.* at 2.) Objecting defendant Eric Mandreger managed Ace's sales department from the Troy business office. (Pls.' Compl. at ¶ 16.) Tony Archie,

---

Although plaintiffs sought an adverse inference against objecting defendants on the issue of personal jurisdiction, this Court found that inappropriate, as the sanctionable behavior was that of Ace, not objecting defendants. (Order and Final Report and Recommendation [128] at 3-4, adopted by Order [143].)

[2] Defendants' Second Motion to Dismiss [123] incorporates the facts from the Memorandum of Law [33-1] from their First Motion to Dismiss [33].

who does not object to personal jurisdiction, managed the Atlanta retail store.  Other persons named in this suit are Jason Floarea, the President of Ace; Barney Gunn, who worked for Ace's Atlanta store; and Moshe Alezra, the principal of CopaTrade, Inc., a Georgia corporation also involved in the alleged Scheme.  (Pls.' Compl. [1] at ¶¶ 15, 20, 21-22, 57-62.)

Plaintiffs allege that jurisdiction is proper over objecting defendants under Georgia's long-arm statute, but because objecting defendants contest this Court's jurisdiction, the Court recites the following relevant facts that have come to light through the Court-ordered discovery, particularly the deposition testimony of objecting defendants.

### B.   FACTS SPECIFIC TO OBJECTING DEFENDANTS

#### 1.   Eric Mandreger

Mandreger worked in Ace's Troy office as business manager. Mandreger represents that he has never lived in Georgia or sold telephones to customers in Georgia.  (Mandreger Dep. [123-9] at 5.) Mandreger did travel on Ace's behalf to Georgia for a four-day period in 2011, where he helped store manager Archie set up the Atlanta store by purchasing a printer and other supplies and helping arrange Ace's Atlanta store.  (*Id.* at 15-17.)  Mandreger states that he did not discuss business matters, purchase or sell any telephones, or have any contact with customers while he was there.  (*Id.* at 16-17.)

5

Moreover, for two of the four days he was there, he was not doing any work whatsoever, as he was undergoing an emergency root canal. (*Id.* at 15-16.)  This was his only substantive contact with the Atlanta store. (*Id.* at 4.)  He does admit to answering three telephone calls from Archie, which he transferred to Floarea. (Mandreger Dep. [123-9] at 4.)  He did not have any electronic contact with Archie or other Georgia residents. (*Id.*)  Mandreger never sold or transferred Ace inventory to Georgia. (*Id.* at 5-6.)  Mandreger's name is listed on Ace online advertisements, which may be accessed from Georgia. (*Id.* at 5.) Mandreger maintains, however, that he had nothing to do with that and played no part in Ace's advertising. (*Id.*)

        2.   <u>Dominick Lanore</u>

Lanore managed Ace's Taylor store. As part of his job, Lanore participated in periodic Ace conference calls, which also involved Floarea, Genel, and Archie. (Lanore Dep. [123-8] at 8-9.)  These calls, as described in the depositions, served as opportunities for Floarea to communicate with each of the Ace retail stores, with each manager--Lanore, Genel, and Archie--reporting to Floarea in turn. Lanore cannot recall any direct contact with Archie or other Atlanta store employees, other than through those conference calls, which he claims Floarea initiated. (*Id.* at 5.)  Lanore has never physically traveled to Georgia, but does admit to posting www.craigslist.org advertisements for Ace, which may be viewed from Georgia. (*Id.* at

6

9.)  Lanore insists he only purchased phones from customers who came to the Taylor store, and cannot recall having any customers from Georgia.  (*Id.* at 5-6.)

       3.   <u>Jose Genel</u>

Genel managed Ace's Chicago store.  Genel has never lived in Georgia or been to the Ace store in Atlanta.  (Genel Dep. [123-10] at 3.)  Genel purchased telephones only from customers who came to the Chicago store, and can recall no customers from Georgia.  (*Id.* at 10-11.)  Like Lanore, Genel participated in the Ace conference calls that included employees from the Atlanta office.  (*Id.* at 6-7).  He maintains, however, that he only discussed the business of the Chicago store during these calls, not the Atlanta store.  (*Id.* at 7-8.)  Outside of the conference calls, he only contacted Archie once, to ask about the security company the Atlanta store used.  (Genel Dep. [123-10] at 5-6, 9.)  Genel posted advertisements for Ace on the Chicago <u>www.craigslist.org</u> website, which is accessible from Georgia.  (*Id.* at 10.)

Plaintiffs have produced evidence, in the form of FedEx shipping receipts, that suggest that Genel sent "two large packages" to the Atlanta store, addressed to Archie.  (*Id.* at 15-17.)  Genel maintains that he never sent anything to, or received anything from, the Atlanta store.  (*Id.*)  He claims that his name was pre-printed on the labels by someone at the Troy office, and that he had no part in it.

(Genel Dep. [123-10] at 14.)  In support of this, he points out that his name was misspelled in one of the two instances, indicating that somebody else was responsible.  (*Id.* at 16.)  Finally, Genel's bankruptcy petition lists some creditors with Georgia addresses, to whom Genel owes over $4,700.  (Pls.' Resp. [125] at 18.)

## DISCUSSION

### I.   MOTION TO DISMISS STANDARD

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing a prima facie case of jurisdiction.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009).  "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

In evaluating plaintiffs' case, the district court must accept as true the allegations in the complaint.  *Stubbs*, 447 F.3d at 1360. Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.*  Where the plaintiff's complaint

8

and supporting affidavits and defendant's affidavits conflict, the district court must "construe all reasonable inferences in favor of the plaintiff." *Id.*

II.  **APPLICATION OF THE MOTION TO DISMISS STANDARD**

For a defendant to be subject to personal jurisdiction, "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010). The Georgia long-arm statute, O.C.G.A. § 9-10-91, does not grant jurisdiction that is "coextensive with procedural due process," but "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* at 1259. As such, the Court must apply the "specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Id.* at 1263. If the long-arm statute's requirements are satisfied, the court then determines whether or not the exercise of jurisdiction violates federal due process.

A.    **The Georgia Long-Arm Statute**

The Georgia long-arm statute permits the exercise of personal jurisdiction over a nonresident who, personally or through an agent:

> (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91(1)-(3).[3]  The Court analyzes defendants' conduct first under subsection (1), before turning to subsections (2) and (3).

1.   O.C.G.A. § 9-10-91(1)

The first prong of the Georgia long-arm statute confers personal jurisdiction over any nonresident, in person or through an agent, who "[t]ransacts any business" within Georgia.  O.C.G.A. § 9-10-91(1). This provision must be "read literally."  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1259.  The Eleventh Circuit has instructed that "courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business

---

[3]    Sub-section (4) of the statute, which provides jurisdiction where a defendant owns, uses, or possesses any real property situated within Georgia, is not at issue here.  The two final sub-sections of O.C.G.A. § 9-10-91 govern domestic matters and are also not implicated by this litigation.  *See* O.C.G.A. §§ 9-10-91(5) and (6).

10

within this state' requirement of O.C.G.A. § 9-10-91(1) according to the facts of each case." *Id.* at 1263. The Georgia Court of Appeals has provided further clarification:

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517-18 (2006). The Georgia statute purportedly imposes independent requirements from those of federal due process. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1261. Nonetheless, it is clear that the first two prongs of the *Aero Toy Store* test amount to a form of "minimum contacts" test, and the last prong provides a "fair play" standard, both familiar to federal due process. *See, e.g., Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Applying the minimum contacts prongs to the objecting defendants, it is apparent that Mandreger has satisfied the first prong, in that his trip to Georgia to help set up Ace's Atlanta store means that he has "purposefully done some act or consummated some transaction in this state." *Aero Toy Store, LLC*, 279 Ga. App. at 517-18. It is also the case that the plaintiffs' cause of action "is connected with such act or transaction," in that setting up the Ace store is connected with the subsequent alleged injuries to

11

plaintiffs.  *Id.*

Defendants Genel and Lanore, however, have never been to Georgia.  Thus it might be assumed that they have not "purposefully done some act or consummated some transaction in [Georgia]," and subsection (1) would not provide jurisdiction over them.  *Id.* Ordinarily, a defendant's demonstration that it has not directed any purposeful act, or consummated any transaction, in Georgia does preclude the reach of Georgia's long-arm statute.  *See Jordan Outdoor Enter., Ltd. v. That 70's Store, LLC*, 819 F. Supp. 2d 1338, 1343 (M.D. Ga. 2011)(merely operating infringing website accessible in Georgia and elsewhere does not amount to transacting any business); *Dixie Homecrafters, Inc. v. Homecrafters of Am., LLC*, Civil Action No. 1:08-cv-0649-JOF, 2009 WL 596009 (N.D. Ga. Mar. 5, 2009) (Forrester, J.)(out-of-state employee telephoning in-state supervisors several times a week to communicate about work did not amount to transacting any business).

Yet, a defendant does not always need to physically enter the state to have transacted business there, meaning that "intangible" acts, such as mail and telephone calls to Georgia, should be considered in the analysis.  *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1264-65 (defendant transacted business in Georgia when it sent purchase orders to a Georgia manufacturer, required delivery by customer pickup, arranged for third parties to pick up in Georgia the

12

product that parties had purchased, and promised to pay money into Georgia). Thus, intangible acts may, if they consummate some transaction, support personal jurisdiction under the long-arm statute.

On this basis, defendant Genel likewise meets the first prong of the *Aero Toy Store* test, in that the mailing of the two packages to Georgia under his name amounts to a purposeful act performed in Georgia.[4] In Genel's case, however, there is no evidence that the mailing had any connection to plaintiff's causes of action, as there is no indication what the packages contained or the purpose for which they were mailed. Nor, as plaintiffs describe the Scheme, is there any apparent reason that Genel would be mailing plaintiffs' mobile telephones to the Atlanta store. Whereas Mandregger's actions in setting up the Atlanta store were, in a loose sense, preconditions to the Atlanta store carrying out the Scheme, there are no grounds for finding that Genel's mailing of the packages were preconditions to the Scheme, or even related to it. Genel's actions do not, therefore, satisfy the second prong of the *Aero Toy Store* test.

As for defendant Lanore, the first prong is not met, as he has performed no acts nor consummated any transactions in Georgia. The

---

[4] For purposes of personal jurisdiction, the Court accepts plaintiffs' contention that Genel mailed these packages. Genel does dispute that assertion.

13

closest he comes to doing so is in participating in conference calls along with Archie.   On this matter, this Court agrees with Judge Forrester that a series of telephone calls with an employer (or here, a fellow employee) is insufficient on its own to constitute a transaction of business under Georgia law.  *See Dixie Homecrafters, Inc.*, 2009 WL 596009, at *8-9.  *See also Canty v. Fry's Elec., Inc.*, 736 F. Supp. 2d 1352, 1370 (N.D. Ga. 2010)(no jurisdiction over defendant who received email from Georgia customer and instructed a subordinate employee to handle the emailed request).  Thus, there is no jurisdiction over Lanore under O.C.G.A. § 9-10-91(1).

The third prong of the *Aero Toy Store* test interprets O.C.G.A. § 9-10-91(1) to impose a "traditional fairness and substantial justice" requirement.  *Aero Toy Store, LLC*, 279 Ga. App. at 518.  Georgia law thus limits the reach of subsection (1), even where Georgia's minimum contacts analysis is satisfied, so as "to ensure that [jurisdiction]" does not result solely from "'random, fortuitous or attenuated' contacts."  *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 535 (2009)(finding contacts were not random, fortuitous, or attenuated where the defendant's activities in Georgia were essential in giving rise to the tort).  Georgia courts have hesitated to treat telephone or mail contacts alone as a fair and just basis for personal jurisdiction.  *See Anderson v. Deas*, 279 Ga. App. 892, 893-94 (2006)(no persistent course of business from

14

regular phone calls to Georgia residents); *Bradlee Mgmt. Servs., Inc. v. Cassells*, 249 Ga. 614, 615-17 (1982)(reporter mailing news tapes to Georgia television station for a news report was not engaged in persistent course of conduct).  Even multiple visits to Georgia by a non-resident defendant may "establish only a fortuitous or attenuated contact."  *Taeger Enter., Inc. v. Herdlein Tech., Inc.*, 213 Ga. App. 740, 747 (1994)(jurisdiction improper where foreign company representative visited domestic job site and complimented the work being done there.) *Compare Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 931 (11th Cir. 2007)(jurisdiction proper where foreign company representatives visited domestic factory, discussed the manufacturing process, suggested ways to improve manufacturing, and suggested entering into an exclusive manufacturing agreement).

Looking beyond the question of whether their contacts were sufficient under the minimum contacts prongs of the *Aero Toy Store* test, the contacts alleged of objecting defendants fall into the above categories of "random," "fortuitous," and "attenuated." Of the three, only Mandreger was physically present in Georgia, and his presence in the state was short and only distantly related to the causes of action in this suit, consisting as it did of menial tasks not a part of the workings of the alleged Scheme. Moreover, the visit was both random and fortuitous, in that it was an isolated work assignment that fell well outside his normal duties as a store

15

manager at Ace.   Thus, while Mandreger's visit is a contact very loosely connected to the plaintiffs' causes of action, it does not satisfy the *Aero Toy Store* requirement of fairness.   Likewise attenuate to plaintiffs' causes of action are Genel's direct telephonic and electronic contacts with Archie, which concerned security services providers, a matter unrelated to the Scheme. Because Genel and Lanore's participation in the conference calls are too remote to satisfy Georgia's minimum contacts requirements, it would also be unfair and unjust to require them to be haled into court in Georgia on that basis.   These activities cannot reasonably be said to have furthered the Scheme, and thus fail to meet the standards of traditional fairness and substantial justice.

> 2.   <u>O.C.G.A. § 9-10-91(2) and (3)</u>

Under O.C.G.A. § 9-10-91(2), a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious act or omission within Georgia, insofar as the exercise of personal jurisdiction comports with constitutional due process.   *Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 674 (2005).   The Georgia Supreme Court has expressly rejected a line of Georgia cases that "expanded subsection (2) to encompass nonresidents in those situations where the cause of action arising from injury in Georgia resulted from a tortious act or omission occurring outside [the] State."   *Id.* at 673.   Instead, a defendant

16

who commits a tortious injury in Georgia caused by an act or omission outside of Georgia must seek jurisdiction under subsection (3).  Read literally, subsection (3) limits the exercise of jurisdiction over defendants who commit tortious acts outside of the state, which cause injury in the state, to a tortfeasor who "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."  O.C.G.A. § 9-10-91(3).

     To determine whether subsection (2) or (3) applies, the Court must first decide where the tortious behavior and injury took place.  Jurisdiction under O.C.G.A. § 9-10-91(2) requires that the tortious behavior occur within the state of Georgia.  Here, plaintiffs allege that tortious behavior and injury took place in Georgia, among other jurisdictions.  While it is clear that Ace and the employees of its Atlanta store would be subject to personal jurisdiction under this subsection, it is not the case that objecting defendants have themselves committed any alleged torts while in Georgia.  Mandreger is the only one of the three to have been present physically in Georgia.  But none of his actions there--setting up store shelves and purchasing office supplies--can reasonably be described as tortious.  There is no proximate cause connecting those actions to the Scheme alleged.  Insofar as Mandreger might have committed torts against plaintiffs, he did so in Michigan, where he bought and sold

17

telephones, not Georgia.  Because Genel and Lanore had no physical presence in Georgia, subsection (2) cannot apply to them.

Nor is jurisdiction under the long-arm statute available under O.C.G.A. § 9-10-91(3).  This subsection permits the exercise of jurisdiction over a defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3).  Even if defendants Mandreger, Lanore, and Genel have caused injuries in Georgia by their out-of-state tortious acts, the facts do not indicate that any of the three does regular business in Georgia, engages in any persistent course of conduct in Georgia, or  derives substantial revenue from goods used or services rendered in Georgia.  The occasional conference calls involving Lanore and Genel, Mandreger's visit, and Genel's mailings are all too episodic and isolated to be regular business or a persistent course of conduct.  Thus, even if objecting defendants committed torts that caused injuries in Georgia, there are not the systematic contacts with the state that subsection (3) requires.

3.   <u>Conspiracy Jurisdiction</u>

There is one remaining way the plaintiff may establish personal jurisdiction over objecting defendants under Georgia law.  Georgia

18

recognizes a "conspiracy theory" of personal jurisdiction. Under Georgia law, "the in-state acts of a resident co-conspirator may be imputed to a nonresident co-conspirator so as to satisfy the specific contact requirements of the Georgia Long Arm Statute." *Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*, 305 Ga. App. 283, 294 (2010). *See also Rudo v. Stubbs*, 221 Ga. App. 702, 703 (1996)("we agree with the many courts which have held that the in-state acts of a resident co-conspirator may be imputed to a non-resident co-conspirator to satisfy jurisdictional requirements under some circumstances"); *Earthlink, Inc. v. Pope*, Civil Action No. 1:03-cv-2559-JOF, 2006 WL 2583066 (N.D. Ga. Aug. 31, 2006)(Forrester, J.)(applying conspiracy jurisdiction). Under Georgia law, "[t]he essential element of the alleged conspiracy is proof of a common design establishing 'that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.'" *Tyler v. Thompson*, 308 Ga. App. 221, 225 (2011)(quoting *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 649 (2006)). Thus, conspiracy jurisdiction permits personal jurisdiction over a defendant whose own acts might be insufficient to establish minimum contacts, but who, through an agreement with others who have carried out acts in Georgia, has participated in acts that establish minimum contacts.

Nonetheless, jurisdiction will not lie merely in reliance on

19

imputed acts.  *See Rudo*, 221 Ga. App. at 703 ("This Court has rejected a 'conspiracy theory' of jurisdiction where the plaintiff tried to rely on imputed acts to bypass the requirements of due process.")  That is, "the bare existence of a conspiracy is not enough to support long arm jurisdiction without a further showing of a 'contact' with the forum jurisdiction."  *Coopers & Lybrand v. Cocklereese*, 157 Ga. App. 240, 246 (1981).  Such "contact" means a "purposefully sought activity with or in Georgia by the non-resident."  *Id.*  Thus, for conspiracy jurisdiction to obtain, the agreed-upon activity must be directed toward Georgia.[5]

This Court finds the alleged conspiracy linking objecting defendants to those defendants subject to personal jurisdiction in Georgia too attenuated to satisfy the standards of Georgia law. Here, the specific allegations against these defendants do not go beyond what the *Cocklereese* court called the insufficient "bare existence of a conspiracy."  The bases for the conspiracy alleged are the facts that objecting defendants worked for a company that had a store in Georgia, and that objecting defendants had a few random

---

[5]  Thus some cases have emphasized that conspiracies directed toward a Georgian are sufficient for jurisdiction.  *See Rudo*, 221 Ga. App. at 704 ("When the purpose of a conspiracy is to commit an intentional tort against a Georgian, all of the coconspirators are purposefully directing their activities toward Georgia and should reasonably anticipate being haled into court here.")(citing *Nat'l Egg Co. v. Bank Leumi le-Israel, B.M.*, 514 F. Supp. 1125, 1127-28 (N.D. Ga. 1981)).

AO 72A
(Rev.8/82)

contacts with the employees at the Georgia store.   There is no evidence, however, upon which to infer any agreement to carry out the alleged Scheme in Georgia involving the objecting defendants.[6]   The plaintiffs have thus not met their jurisdictional burden.   *See Stubbs*, 447 F.3d at 1360.

**B.   Federal Due Process**

Although this Court finds jurisdiction over objecting defendants improper under Georgia law, in the interest of thoroughness it also analyzes the facts under federal due process.

Federal due process provides a dual system of protection that requires a plaintiff to show that the defendant has "minimum contacts" with the forum state.   *Int'l Shoe Co.*, 326 U.S. at 316. *See also Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630-31 (11th Cir. 1996)(applying the minimum contacts analysis).   In addition to minimum contacts, due process requires that the exercise of jurisdiction over the defendant comports with "traditional notions

---

[6]   It is perhaps useful to understand the alleged conspiracy as a "hub and spokes" type, rather than a "chain" or "wheel" type conspiracy. *See* Note, *Federal Treatment of Multiple Conspiracies*, 57 COLUM. L. REV. 387 (1957).   In the latter case, each conspirator is dependant on the others for the success of the conspiracy.   In the former type of conspiracy, the various "spokes" (here, the individual Ace stores and their employees) are independent of each other and connect only with the main "hub" (Floarea and the Troy business office).   Any contacts among the various spokes are fortuitous, as the success of the conspiracy does not depend on their incidental communications.

of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.  *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  This second analysis involves balancing several "fairness factors" to ensure that requiring the defendant to appear in the forum is reasonable under the circumstances.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

   1. <u>Minimum Contacts: General and Specific Jurisdiction</u>

  A defendant's contacts with the forum jurisdiction can sometimes be extensive enough to give rise to general jurisdiction.  General jurisdiction allows a plaintiff to sue the defendant in the forum state on any claim, regardless of whether the claim is connected to the defendant's activities in the state.  *Goodyear*, 131 S. Ct. at 2851.  General jurisdiction requires "continuous and systematic" contacts with the forum.  *Id.*  The Supreme Court established a high bar for the quantity of contacts that rises to the level of "continuous and systematic" in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  In *Helicopteros,* the non-resident defendant's contacts with the forum state consisted of sending its CEO to the state to negotiate contracts, accepting checks drawn from a bank located in the state, spending "substantial sums" on equipment purchased in the state, and sending employees to train there.  *Id.*  The Court held that this level of contacts did not suffice for general jurisdiction.  *Id.*  Based on this high bar, there

can be no doubt that there is no general jurisdiction over objecting defendants here, none of which had "continuous and systematic" contacts with Georgia.

In contrast to general jurisdiction, specific jurisdiction requires only a sufficient link between the plaintiff's cause of action and the defendant's contacts with the forum state. *Goodyear*, 131 S. Ct. at 2851. Specific jurisdiction exists when a defendant (1) purposefully avails itself of contacts in the forum state and (2) there is a "sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. These two elements ensure that a defendant is only burdened with litigation in a forum where his "'conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there.'" *Oldfield*, 558 F.3d at 1220-21 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). When a defendant purposefully avails itself of contacts with the forum state and a sufficient nexus exists between those contacts and the plaintiff's claim, then the defendant has "fair warning" that it might be sued in the forum state. *Burger King Corp.*, 471 U.S. at 472.

The Eleventh Circuit has recognized "that a minimum contacts analysis is 'immune to solution by checklist,' and that contacts must be viewed both quantitatively and qualitatively." *Sloss Indus.*

23

*Corp.*, 488 F.3d at 925 (citation removed).  On the quantitative side, this Circuit has distinguished cases where the nonresident defendant's contacts with the forum state arise from a "lone transaction" from those cases where the contacts constitute an "ongoing course of dealing." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1270 (distinguishing from *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055 (11th Cir. 1986)).  *See also Sloss Indus. Corp.*, 488 F.3d at 931 ("Unlike the one-time transaction at issue in *Borg-Warner*, this case involves ten orders placed . . . over a period of several months.")  A large number of contacts alone is not dispositive; the Eleventh Circuit has denied personal jurisdiction over a foreign company that sold goods to a domestic company numerous times over a period of four years.  *Banton Indus., Inc. v. Dimatic Die & Tool Co.*, 801 F.2d 1283 (11th Cir. 1986).

On the qualitative side, "a fundamental element of the specific jurisdiction calculus is that plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum." *Oldfield*, 558 F.3d at 1222 (quoting *Burger King*, 471 U.S. at 472). The Eleventh Circuit has consciously avoided adopting any "'mechanical or quantitative' tests" for relatedness.  *Id*.  It has, however, indicated that the inquiry "must focus on the direct causal relationship among 'the defendant, the forum, and the litigation.'" *Id*.  This direct causal relationship must satisfy both but-for and

24

proximate causality. *Id.* at 1222-23 ("Necessarily, the contact must be a 'but-for' cause . . . . [and] foreseeability constitutes a necessary ingredient of the relatedness inquiry.")  For example, in *Oldfield*, the Court held that a website that could be accessed from the forum state satisfied the but-for requirement, but not the foreseeability requirement.  *Id.* at 1223.

Objecting defendants' all had few contacts with Georgia.  In Mandreger's case, he had but one contact.  Lanore and Genel had more, most of which consisted of their conference calls.  As discussed above with respect to the Georgia minimum contacts analysis, all of these contacts are weak from a qualitative perspective.  Mandreger's visit is only tenuously related to the plaintiffs' causes of action.  Whereas Georgia law requires only a "connection" between the cause of action and the defendant's in-state acts, the federal standard requires but-for causality and foreseeability, neither of which can reasonably be read into Mandreger's visit to Georgia.  Genel and Lanore had even weaker contacts with Georgia, and those contacts were likewise only ambiguously related to the plaintiffs' causes of action.  Where the Eleventh Circuit permits personal jurisdiction under federal due process requirements, it does so only where the contacts were either greater in number or of more substantial nature than the ones alleged here.  Thus, this Court finds that it does not have personal jurisdiction over the objecting plaintiffs.

25

2.   <u>Fairness Factors</u>

Because this Court has determined that there are no minimum contacts, it is presumed that it would be unfair to force defendants to litigate in a Georgia forum.  If minimum contacts had been established, this Court would discuss whether exercising personal jurisdiction would otherwise comport with "fair play and substantial justice." *Sculptchair, Inc.*, 94 F.3d at 631.  At that point, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

Courts look to five "fairness factors" to determine whether exercising jurisdiction over a defendant is reasonable:  (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies.  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1276 (11th Cir. 2002).

Here, the Court simply notes that the burden on the objecting defendants of litigating this dispute in Georgia is rather onerous, as they live in Illinois and Michigan.  On the other hand, the Court recognizes the plaintiffs' interest in conveniently and effectively

26

resolving the litigation against all of the defendants in one forum and the judicial system's interest in efficiently resolving this dispute.   Again, however, the absence of minimum contacts by the objecting defendants likewise tips the fairness question their way.

<u>**CONCLUSION**</u>

Based on the foregoing analysis, the Court **GRANTS** defendants Eric Mandreger, Dominick Lanore, and Jose Genel's Second Motion to Dismiss for Lack of Personal Jurisdiction [123].


SO ORDERED, this 20th day of February, 2014.



/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

27